## LOUISA SCHMIDT, Admx. etc.

*v.*

## THE CHICAGO AND NORTHWESTERN RY. Co. *et al.*

1. JURY—*number of challenges allowed defendants.* In all civil actions each "party" is entitled to only three peremptory challenges to jurors,—the word "party" representing all the persons who may be plaintiffs or defendants.

2. NEGLIGENCE—*is a question of fact.* An instruction which assumes to tell the jury as to what is negligence, is properly refused, as that is a question of fact for the jury to determine.

| | |
|---|---|
| 83 | 405 |
| 129 | 555 |
| 30a | 359 |
| 83 | 405 |
| 33a | 125 |
| 83 | 405 |
| 37a | 85 |
| 83 | 405 |
| 150 | 105 |
| 154 | 513 |
| 83 | 405 |
| 174 | 79 |
| 83 | 405 |
| 82a | 310 |
| 83 | 405 |
| 87a | 519 |
| 83 | 405 |
| 90a | 11 6 |
| 83 | 405 |
| p201 | 1624 |
| 201 | 1626 |
| 83 | 405 |
| 210 | 1274 |

3. Same—*as to number of brakemen employed.* A railway company is only bound to man its trains with a sufficient number of brakemen to meet the ordinary use of its road, unless it knows or has reasonable grounds to believe that an unusual exigency will arise, requiring more than are usually necessary for the protection of persons or property.

4. Same—*rule when there is mutual negligence.* Where both parties are guilty of negligence, that of the plaintiff must be slight when compared with that of the defendant, and his must be gross, to authorize a recovery against him. A mere preponderance of negligence on the part of the defendant is not sufficient.

5. Same—*instruction as to crossings and approaches on right of way.* Where there is no evidence tending to prove that a railway company had omitted any duty in constructing and maintaining a crossing and approach to its road, where a person is killed, an instruction relating to the duty of the company in this respect, in an action against it, is properly refused.

6. Same—*instruction ignoring rule of comparative negligence erroneous.* In an action against a railway company for killing a person through negligence, where the proof shows that the train causing the death was running at nearly double the speed allowed by ordinance of the city when the accident occurred, and that no signals were given, an instruction limiting a recovery to negligence of the company, and freedom of the deceased from negligence materially contributing to the injury, is erroneous, as keeping out of view the rule as to comparative negligence.

7. Same—*degrees of negligence is a question of fact.* It is for the jury to say whether the running of a train of cars in a city at a greater speed than allowed by ordinance, together with other facts, was gross negligence, and whether the negligence of one killed by the train was slight in comparison.

8. Same—*liability of city for injury caused by opening in sidewalk.* If a party falls and is run over by a train of cars before he can arise, and his fall is occasioned by a hole in a sidewalk of a city, and the latter is guilty of negligence in not repairing it, the city will be liable for all the immediate and proximate injuries following.

9. Same—*liability of city for defects in sidewalk after reasonable time.* After a reasonable time has expired for city authorities by the use of due diligence to learn of defects in the streets or sidewalks, and they are not repaired, the city will be guilty of such negligence as to render it liable for any injury produced thereby.

10. If a person, in approaching a railroad track from the sidewalk, falls, and gets up safely without being injured, and unnecessarily goes upon the track afterwards, where he is injured by a passing train, the city will not be liable for the injury; but if he is injured by the train before he can get up, the rule is otherwise.

11. BILL OF EXCEPTIONS—*when it must preserve the whole of the evidence.* It is only where error is assigned on the finding of the court or jury that all the evidence is required to be embodied in a bill of exceptions.

12. Where questions of law only are intended to be presented to this court, as, the giving or refusing of an instruction, it is sufficient to state in the bill of exceptions that the evidence tended to prove the fact on which the instruction was given or refused.

13. Where the record shows that the court below committed error in allowing challenges of jurors and in giving instructions, the judgment will be reversed, although the bill of exceptions does not profess to give all the evidence.

APPEAL from the Superior Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was an action on the case, by Louisa Schmidt, against the Chicago and Northwestern Railway Company and the city of Chicago, to recover damages for the death of Frederick Schmidt, the plaintiff's intestate, caused by the negligence of the defendants, as was claimed. A trial was had, resulting in a verdict and judgment in favor of the defendants, to reverse which this appeal was taken.

Mr. ALLAN C. STORY, and Mr. RUFUS C. KING, for the appellant.

Mr. A. M. HERRINGTON, Mr. EGBERT JAMIESON, and Mr. R. S. TUTHILL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is first urged that the court erred in permitting each defendant to challenge peremptorily three jurors. The statute, chap. 110, sec. 49, p. 781, provides, that " In all civil actions, each party shall be entitled to a challenge of three jurors, without showing cause for such challenge." This provision has been in force since 1827, if not longer, and, as we understand, during all that time it has been the general practice, and so understood by the entire profession, that each side to the case, without reference to the number of persons in each, in all civil cases, have but three peremptory challenges; and

this is true whether there be one or a number of persons plaintiff or defendant.

In the case of *Cadwallader* v. *Harris*, 76 Ill. 370, this court held, that " the word ' party,' when applied to the defendant, can only means the person or persons named as defendant or defendants in the judgment." The definition given to the word as defined by lexicographers, is, a plurality of persons: as, a political party; a select company invited to an entertainment; a company made up for a given occasion; in military affairs, a detachment or a small number of troops, etc. Thus it is seen that the word is applied as well to a number of persons as to a single individual.

The provision in the Criminal Code is, that every person arraigned for any crime, etc., shall be admitted to challenge, etc. Here, we have very different language from that used in the Practice Act governing civil suits. And this difference seems too marked to have been accidental. It must have been intended to produce a different practice in the two classes of cases. In criminal proceedings, each person, when arraigned, whether alone or with others, is to have the challenges specified; and in civil cases, the plaintiff or plaintiffs three peremptory challenges, and the defendant or defendants a like number. Hence we regard the practice, as unquestioned for half a century or more, to be a proper construction of the statute, and too firmly established to be shaken.

It is insisted, that the court below erred in giving instructions for appellees, and in modifying appellant's before they were given, and, also, in refusing to give others asked by appellant. The first of her refused instructions was properly rejected, as it assumed to instruct the jury as to what would be negligence, when it was their province to determine that question. It was a question for the jury to determine, whether there were brakemen enough on the train for ordinary purposes. The company are only bound to man their trains to meet the demands of the ordinary use of the road, unless they know or have reasonable grounds to believe that an unusual exigency will arise or exists that requires more brakemen than

are usually necessary for the security of persons or property. If the company were employing the usual number of brakemen, and that was all that was ordinarily required, and the bill of exceptions does not state there was evidence tending to show that there was not the usual or necessary number, then this instruction was wrong.

The company are only required to guard and provide against the ordinary risks of the business. They are, for that purpose, bound to have their engines and trains under reasonable control, and should provide sufficient force for the purpose, either of brakemen or steam brakes. If two brakemen were all that the business reasonably required, they were not bound to have a third one on their train. It might have been that, if there had been a brakeman on each car, the train would have been stopped in a much shorter space than it was; but who can say there would ever be need for more than two in the future; and the bill of exceptions does not state that the evidence tended to show that there had ever been such a necessity before at that place.

The second refused instruction is inaccurate, and does not state the law. Whatever form of expression may have been employed by the court in defining the rule, it has never been intended to say, nor do we understand that we have said, that a mere preponderance of negligence on the part of a defendant will authorize a recovery. Where both parties are guilty of negligence, that of the plaintiff must be slight when compared with that of the defendant, and his must be gross.

As to the third refused instruction asked for appellant, the bill of exceptions does not state that there was evidence tending to show that the railroad company had omitted any duty in constructing and maintaining the crossing and approaches to the road at that place. The opening in the sidewalk, which it is claimed occasioned the fall which led to the death of Schmidt, although near to the railway track, may not have been a part of the approach to the railroad track. If not, then the instruction was improper. We do not understand the bill of exceptions to state that there was evidence tending

to show that this opening was on the right of way of the railway company. If it was not, and there was no such evidence, then the instruction was properly refused.

The modification to appellant's instructions which were given, did not render them vicious. The modifications were immaterial, and did not announce any rule of law that was calculated to mislead the jury to appellant's injury. There was, therefore, no error in giving these instructions as modified.

It is also urged, that the court erred in giving appellees' instructions. The first instruction given for the railroad company limits a recovery to the negligence of the railroad company, and a freedom of deceased from negligence materially contributing to the injury. This, we think, was erroneous. The bill of exceptions shows that there was evidence tending to show that this was a thoroughfare; that the train was running at nearly double the rate of speed allowed by the ordinance of the city; that no bell was ringing or whistle sounding, nor a flagman there to warn persons not to pass. This manifestly made a case for the jury to compare the negligence of both parties, and say whether, when so compared, that of deceased was slight and that of the railroad gross. It was for the jury to find these facts, and they should have been properly instructed.

The same objection applies to the second of the company's instructions. The third and fourth fail to state the law of comparative negligence, and omit to require the train to conform to the speed limited by the ordinance. Had this train been running at the rate of forty or fifty miles, it would have been seen at a glance that the instruction would have been wrong, and it was for the jury to say if it was running ten miles an hour, and the other duties which are claimed to have been omitted were grossly neglected, and the negligence of deceased was slight in comparison. It was not for the court to say the rate of speed was immaterial if deceased was negligent. He had a right to suppose the company would conform the speed of their train to the ordinance. He is not

presumed to have known that a railroad company would violate the law and run at a higher rate of speed than allowed. A person crossing a railroad track when a train is near and running at the rate of six miles an hour, might do so with safety, and no one would say that he was negligent, when, if the train was at the same distance, and running at the rate of thirty or forty miles an hour, it would be extremely perilous. Hence, when a train is running at a high rate of speed, and the person crossing supposes it to be running at the low and lawful rate, he necessarily incurs, unconsciously, greater risk than he supposes.

If the fall was occasioned by the hole in the sidewalk, and the city was negligent in not repairing it as they should have done, then it is liable for all of the immediate and proximate injuries that flowed from the negligence. If the city was guilty of negligence in failing to repair this place, and deceased had fallen and broken his leg, the city would have been undeniably liable for the injury, and had he fallen by reason of this opening, and whilst down, and before he could have arisen, he had been unavoidably run over and injured by a team, the city would have been liable, because the injury was the proximate consequence of the negligence of the city.

The bill of exceptions states that the evidence tended to show that the opening had been in the sidewalk for several weeks, and had not been repaired. After a reasonable time has expired for the city authorities, by the use of due diligence, to learn of such defects in the streets and sidewalks, and they are not repaired, then the city will be held to be guilty of such negligence as to render it liable for such injury as may be produced thereby. If deceased, after falling, arose and went on the railroad track, and was injured there, the injury would not be the proximate result of the fall, but the result of going on the track after he got up from the fall. But if, whilst he was down, he was injured by the train, then it was the proximate result of the fall, and the fall the immediate result of the defect in the walk.

Whilst these instructions ignore the rule of comparative

negligence, we do not find that there is anything in the case
to render such instructions improper to be given for the city.
In other respects they state the law correctly. They, per-
haps unnecessarily, refer to a want of care and prudence on
the part of deceased after he got up, in going on the track.
If he got up safely without being injured, and he unnecessa-
rily went upon the track afterward, we are unable to see in
what manner the city can be held liable. If he thus acted
the injury would be too remote from the fall to render the
city liable. We are of opinion that these instructions were
not erroneous.

It is urged that, as the whole of the evidence does not ap-
pear in the bill of exceptions, we will presume that the evi-
dence so clearly sustains the finding that we should not disturb
it, notwithstanding the errors in permitting the illegal chal-
lenges and erroneous instructions. We can not so hold.
Before the law required us to pass upon the weight of evi-
dence when preserved, to show the jury had found against it,
the practice was, to simply state in the bill of exceptions that
the evidence tended to prove a fact, that this court might see
whether the instructions given on that point were correct.
The whole of the evidence was never preserved in the record
in a suit at law when brought to this court. Nor has the
statute changed the practice where error is assigned on any-
thing but the finding of the court or jury on the facts.

We said, in *Nason* v. *Letz*, 73 Ill. 371, that it was proper
practice, where legal questions were alone intended to be
raised and discussed in this court, for the bill of exceptions to
state that the evidence tended to prove the fact on which the
instruction which is supposed to be erroneous was given or re-
fused. It is only where the evidence is all preserved in the
record, and we can see from it that the jury could have reached
no other conclusion than they did had the instructions and all
of the rulings been correct, that we will affirm notwithstand-
ing error may have been committed in giving or refusing in-
structions. In this case the bill of exceptions shows that the
evidence was inharmonious. As only legal questions arising

on the record are presented, we can not presume the finding was right in despite of the errors committed by the court on the trial of the case.

For the errors indicated, the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*