THE NORTH AMERICAN RESTAURANT AND OYSTER HOUSE

*v.*

WILLIAM H. MCELLIGOTT, Admr.

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

1. CHALLENGES—*each defendant is not entitled to three peremptory challenges.* Under the statute, which is the only authority for peremptory challenges, but three peremptory challenges are allowed to each side; and the fact that the defendants are different corporations and claim to have different grounds of defense does not change the law so as to permit three of such challenges to each.

2. EVIDENCE—*what tends to prove ownership.* Proof that one of the defendants in a personal injury case was organized, under the name of "North American Restaurant and Oyster House," to keep a restaurant at a certain named place; that its name appeared there over each entrance and headed the bills of fare; that the words "North American" and "North American Restaurant Company" appeared in different places on the premises, and that the injury occurred by the breaking of a shaft hanger in the restaurant, tends to prove ownership of the restaurant by such defendant.

3. NEGLIGENCE—*duty of owner of machinery to employee of another party.* A restaurant company which owns the machinery and appliances in its place of business owes to a person required to work with such machinery and appliances the duty of keeping the same in reasonably safe condition and repair, and not to imperil, by its negligence, the life or limb of such person, even though the latter is in the employ of another company which furnishes steam to the restaurant company to run its machinery and appliances.

4. SAME—*when proof of promise to repair is material though the relation of master and servant does not exist.* The effect of a promise to repair, with respect to the doctrine of assumed risk, applies only as between master and servant; but when an employee

of one person has to work about machinery and appliances owned by another, and he complains to the owner of a defect, which the latter promises to repair, proof of the complaint and promise is material in an action against the owner by the employee for an injury due to the defect, as showing notice of the defect to the owner and the conditions under which the employee continued to work.

5. SAME—*what does not constitute contributory negligence, as a matter of law.* The fact that an engineer, in hurriedly attempting to stop an engine from racing, used the valve which was always used to shut off the steam instead of using other valves located in the boiler room some distance from the engine, does not, as a matter of law, constitute contributory negligence, even though the valve used was so located that the engineer, while closing it, was killed by the falling of a shaft hanger, which broke loose from the ceiling under the strain and jar of the engine.

6. INSTRUCTIONS—*when statement that jury are sole judges of the facts is not objectionable.* While the court should not impress the jury with the idea that they may do with the facts as they please, yet an instruction which states that the jury are the sole judges of the facts is not objectionable, where the statement is merely preliminary to a correct statement of the law relating to the right of the jury to disregard the testimony of any witness who had knowingly and corruptly testified falsely to a material fact in issue.

7. SAME—*a party is not entitled to have instructions repeated.* Refusal of instructions to find the defendant in a personal injury case not guilty if the plaintiff was guilty of negligence is proper, where other instructions given stated that the plaintiff could not recover if he was not in the exercise of ordinary care for his own safety or if the accident was caused by the joint negligence of the plaintiff and the defendant.

8. WITNESSES—*plaintiff calling the defendant as a witness may examine him so as to elicit the facts.* Where the plaintiff in a personal injury case calls as a witness one of the owners of the defendant corporation he may examine the witness in such a way as to elicit the facts, even though the examination partakes of the nature of cross-examination.

9. TRIAL—*counsel must be allowed to draw reasonable deductions from the evidence.* It is not improper for counsel for the plaintiff in a personal injury case to characterize a certain defense as a fake and fraudulent one, where such statement is not an unreasonable deduction from the evidence.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

O. W. Dynes, for appellant:

The North American Restaurant and Oyster House asked and the court refused the following instruction:

8. "The court instructs the jury that if you believe, from all the evidence, Richard McElligott was guilty of negligence in attempting to use the shut-off valve at the racing machine instead of using one of the shut-off valves more distant from it, and if you further believe, from the evidence, that such negligence was the cause of his injury, then your verdict should be not guilty."

The foregoing instruction dealt fairly and fully with one of the ultimate questions in the case. The instruction has been repeatedly approved and upheld by this court. It has been held good in the following recent opinions: *Traction Co.* v. *Leach,* 215 Ill. 184; *Mallen* v. *Waldowski,* 203 id. 87; *Railroad Co.* v. *Camper,* 199 id. 569.

Kickham Scanlan, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Richard D. McElligott was an engineer employed in a restaurant in the basement of the building on the northwest corner of State and Monroe streets, in the city of Chicago. The company operating the restaurant owned and controlled the machinery in and about the restaurant and made all repairs. The Illinois Maintenance Company furnished steam to the restaurant for operating the machinery, and McElligott was employed by that company. One of the machines was a two horse power engine used for running a dish-washing machine. The engine was connected by a belt with a pulley and counter-shaft suspended from the ceiling by hangers, which fell and killed McElligott. His administrator, the appellee, brought this suit in the superior court of Cook county to recover damages for his death. The Illinois Maintenance Company and appel-

lant, North American Restaurant and Oyster House, were defendants. Upon a trial the Illinois Maintenance Company was found not guilty and there was a verdict against appellant, followed by a judgment. Appellant prosecuted an appeal to the Appellate Court for the First District, and upon the affirmance of the judgment prosecuted a further appeal to this court.

The first ruling on the trial which is complained of is. the refusal of the court to allow appellant three peremptory challenges of jurors. The court allowed to the defendants three such challenges but refused to allow to appellant three separate challenges. The right to a peremptory challenge exists only by virtue of statute, and unless the privilege ·is given by some statute it does not exist. (*Schmidt* v. *Chicago and Northwestern Railway Co.* 83 Ill. 405; *Gordon* v. *City of Chicago,* 201 id. 623; 12 Ency. of Pl. & Pr. 476.) The statute allows three peremptory challenges to each side, and there was no error in the ruling. This case presents no new question based ·on the fact that there was a difference in the grounds of defense set up by the different defendants.

The engine was not of sufficient power to do the work required of it, and it was supplied with an unsafe and insufficient governor. It had a capacity of two horse power while four horse power was necessary, and when it was running the dish-washing machine it was overtaxed, and when the machine was thrown out it would race or run away on account of the insufficiency of the governor. When it would race at great speed it made a great noise and jarred the hangers and fixtures attached to the ceiling. Unless stopped it would tear the hangers loose, and on different occasions the governor had allowed the engine to race so· as to endanger the apparatus overhead. In January before the accident a piece of one of the hangers was torn out from that cause and thrown over in the passageway leading from the engine to the kitchen. An engineer by the

name of Lafferty had supervision of the operation of the machinery and attended to making repairs. Complaints of the action of the engine and governor were made to the restaurant company, through Lafferty, both by McElligott and another engineer named O'Brien. Lafferty made some effort to fix the governor, and a few days before the death of McElligott promised that he would put on a new governor and would have it on by the following Monday. McElligott consented to remain with the understanding that the engine was to be shut down at the time fixed unless the new governor was put on, and McElligott said he would not work around it any longer. On Sunday night, at about 11:30 o'clock, shortly before the limit of time when the defect was to be remedied, the apparatus fell, causing McElligott's death.

It is contended that the court erred in refusing to direct a verdict of not guilty as to appellant, and this is sought to be maintained on various grounds, the most important of which is that the plaintiff sued the wrong restaurant company. On the trial, which was more than two years after the accident, it was claimed that the restaurant belonged to the American Restaurant Company instead of the North American Restaurant and Oyster House. Both of these concerns were corporations owned by the same people, and the facts developed on the trial with respect to them were these: Louis Eckstein, Benjamin J. Rosenthal and Louis Stumer were jointly engaged in quite a number of business enterprises, and for each branch of their business they organized a separate corporation. They owned practically all the stock, and joined with them, as directors or officers, Theodore Lillienfield, William Lillienfield and Aaron Nusbaum. Eckstein, Rosenthal and Stumer had a ninety-nine year leasehold of the building on the north-west corner of State and Monroe streets and the restaurant was in the basement. They had an office on the fourth floor, where separate sets of books were kept and the office busi-

228—21

ness of most of the corporations was carried on. One corporation was the American Restaurant Company, which conducted a restaurant at the corner of State and Adams streets. Another was the appellant, North American Restaurant and Oyster House, incorporated with a capital stock of $1000. Eckstein testified that said parties conducted all their different establishments as corporations instead of partnerships, and that the same men owned all the stock in each. They would make contracts as individuals with the corporations of which they were sole owners, and would make contracts between one corporation of which they were exclusive owners and other corporations which they also owned. As samples of their methods of doing business, they made a contract with the Illinois Maintenance Company, which was one of the defendants in this suit, to furnish steam to the two restaurants, one at the corner of State and Adams streets and the other the restaurant in question, at State and Monroe streets. They then made a contract by which they assigned the steam contract with the Illinois Maintenance Company so far as it related to furnishing steam to the restaurant conducted by their corporation the American Restaurant Company in the premises occupied by the latter company, and they signed this contract as individuals, and the signature of the American Restaurant Company was affixed by Louis Eckstein as secretary and treasurer. They executed a lease of the premises to the American Restaurant Company and Louis Eckstein attested it as secretary of the corporation. This illustrates their methods of carrying on the separate branches of their business, and the individuals and corporations were all, in fact, the same, although in law separate entities. The inquiry on the assignment of error that the court refused to direct a verdict is, whether the evidence for appellee fairly tended to prove the charges of the declaration, or whether, in other words, if it stood alone and without contradiction the jury could reasonably have found the material averments of the declaration proved.

The North American Restaurant and Oyster House is a corporation organized "to own, keep and maintain restaurants, eating places, dram-shops, making, buying and selling food, bread, bakers' supplies, and to do a general mercantile business," and its place of business was stated to be the north-west corner of State and Monroe streets, Chicago, Illinois. The restaurant was in .the basement of the north-west corner of State and Monroe streets, and there was an entrance leading down from State street and another from Monroe street. At each entrance there was a sign bearing the words, "North American Restaurant and Oyster House.—Specialties to-day," under which there was a bill-board on which special attractions for each day were to be posted. There were also at each entrance thirteen permanent plates or signs in the fixtures, with the words "North American," and these words were cast in the iron work of the guard railing on both sides of the entrance. There were eleven saloon licenses issued by the city of Chicago to the North American Restaurant Company to keep a saloon in the basement at the north-west corner of State and Monroe streets. The daily bills of fare supplied at the tables were headed, "North American Restaurant and Oyster House." The defense on this branch of the case is.that the restaurant was really owned by the American Restaurant Company, but that name nowhere appeared about the premises. The words "North American" or "North American Restaurant Company" do not indicate the corporation alleged by appellant to be the owner, but would rather appear to be an abbreviation of the name of appellant, and the specialty sign and bills of fare bore the name of appellant. Taking no account of the evidence contradictory to that favorable to the plaintiff, the proof was sufficient to establish the ownership of the restaurant and that any negligence as to the machinery and apparatus was the negligence of appellant.

No excuse can be made for the negligence which resulted in the death of McElligott, but it is further insisted that the court erred in refusing to direct a verdict on the ground that he was guilty of negligence. The dish-washing machine was only running part of the time and was started and stopped as necessity required. When that machine was running the engine was overtaxed, and when it was stopped the engine would run at great speed, making a great noise and jarring the hangers. It was necessary to stop it to prevent tearing the hangers loose. At the time of the accident the dish-washing machine was stopped and the engine started to race, making such a noise that it frightened the girls working in the place and they ran out of the room. The girl at the machine called for McElligott, and he called to her to throw the lever and start the machine again, but she was frightened and ran away. He reached the engine and was in the act of shutting it off when the shaft, hangers and wheel fell and killed him. The basis of the argument that he was guilty of negligence is that he did not go to a valve farther away. There were valves in the boiler room, sixty feet away, and there was one on the steam feeder pipe, seventeen feet distant. There was evidence for the plaintiff that the valve which was used was the one which was always used, and while the valve on the pipe could be reached by standing on a chair, this is the one which was always used and would naturally be used by any one. The evidence did not show that McElligott was guilty of any negligence as a matter of law. While he was in the employ of the Illinois Maintenance Company, the machinery and apparatus were owned by the restaurant company. It was the duty of the restaurant company to exercise reasonable care to keep its machinery, appliances and premises in reasonably safe condition and repair, and not to imperil by its negligence the life and limb of one who was necessarily employed about the same. It is not correct to say that there was no relation between the parties which

gave rise to any duty or obligation toward McElligott, and the court did not err in refusing to direct a verdict of not guilty.

It is next argued that the court erred in instructing the jury. The court wrote and gave to the jury an instruction not requested by either party, advising the jury that if they believed, from the evidence, that the danger of injury was open and obvious to McElligott, the plaintiff could not recover from appellant unless the jury believed that he notified appellant of the defect and appellant expressly promised to remove the defect within a reasonable time, and that he, relying on such promise, continued to run the engine, and the injury complained of resulted to him without fault on his part, within such reasonable time, by reason of said defect, unless the risk was so imminent that no prudent man would have undertaken it. The rule which the court attempted to state related to the law of master and servant, and did not fit the evidence so far as the employer, the Illinois Maintenance Company, was concerned, inasmuch as the complaint and promise to remedy the defect was to and with the appellant. There was, perhaps, some confusion in the instruction as to the two corporations which were defendants, but the instruction did not direct a verdict and we think that it did not harm the appellant. It was favorable to appellant in telling the jury that plaintiff could not recover if the danger was open and obvious, and it exempted appellant from liability if the danger was such that a prudent person would not have encountered it.

Two instructions were given at the request of appellee and they are both criticised, the first on the ground that it informed the jury that they were the sole judges of the facts, and the second that they were to decide, from all the evidence and facts and circumstances in evidence, whether the appellant was the owner and in possession and control of the restaurant. The statement in the first instruction was only preliminary to a correct statement of the law as

to the right of the jury to disregard the testimony of a witness who had knowingly, willfully and corruptly testified falsely to any fact material to the issue. It gave no prominence to the statement that the jury were sole judges of the facts, and there was nothing in it which would tend to make the jury feel independent of the court or the law. The court should not impress the jury with the idea that they have power to do with the facts as they please, regardless of the law and the legal effect of the facts found, but the instruction was not objectionable on that ground. The second was a correct statement of the law.

The court refused to give some instructions requested by the defendant, but every principle of the law which would be of any service to the appellant was contained in instructions which were given. One refused instruction stated that, as a matter of law, the evidence was insufficient to establish the liability of appellant because of an alleged promise to repair the machinery or appliances. The effect of such a promise with respect to the doctrine of assumed risk applies only as between the master and servant, but the evidence was material on the question of notice to appellant and the conditions under which McElligott continued to work around the machinery. If the instruction had been given it would have led the jury to believe that the evidence was immaterial, and the court did right to refuse it. Another refused instruction stated that appellant did not owe to McElligott a master's duty in respect to keeping and maintaining a reasonably safe place for him to work in. It is true that appellant did not owe him any duty as master, but the effect of the instruction would have been to tell the jury that it did not owe him any duty to use any care to maintain safe conditions on its property where it was necessary for him to be in performing work necessary for appellant's business. The court refused several instructions to find appellant not guilty if McElligott was guilty of negligence contributing to the injury, but they only reiterated

the statement of instructions given, that the plaintiff could not recover if McElligott was not in the exercise of ordinary care for his own safety or if the accident was caused by the joint negligence of McElligott and either of the defendants. The defendant was not entitled to have the instructions repeated in substance.

It is complained that the court erred in ruling on the admission of evidence. Louis Eckstein, one of the owners of the corporation and a party in interest, was called and examined as a witness for appellee, and it is contended that the court permitted him to be examined in a manner which amounted to a cross-examination by appellee of his own witness. Some of the questions elicited secondary evidence, but that objection was waived by agreement, and as he was in reality a defendant, the court did not err in allowing such an examination as would elicit the facts. He was examined as to the statements of his application for the charter of appellant, and the objection was that the application was only tentative. He had an opportunity to make any explanation he saw fit, and the question whether the application was a tentative one was for the jury and not to be decided by the court. The evidence was that the daily bills of fare were all burnt up and destroyed, and there was no valid objection to the testimony that the appellant's name appeared at the head. There are some other minor objections to evidence which are not worthy of notice.

Much complaint is made of statements of counsel for appellee in his argument to the jury. He characterized the defense that the wrong restaurant company had been sued as a fake and fraudulent one. Counsel must be permitted to draw such deductions from the evidence as are within reason, and we see nothing improper in what was said.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*