## Joseph Wise, Appellee, v. Oetting Bros. Ice Company, Appellant.

### Gen. No. 23,696.

MASTER AND SERVANT, § 838*—*when shown that driver is employee of ice company so as to render master liable for his negligence.* In an action against an ice company for injuries alleged to have been caused by negligence in the operation of its wagon, where the defense is that the possession and management of the wagon were not in defendant but in a third person, and it appears that defendant allowed such third person's ice business to be conducted in its name as aforesaid, advertising his office as its office, furnishing for use in his retail business stationery and bills bearing its own name, permitting collections from his customers to be made in its name and the wagons to bear its name and the driver to act as its ser-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXII 21

vant to such an extent that he even believed he was, and knowing and permitting all this for the benefits that would accrue to it from such advertising, the jury were justified in finding that the driver was its servant, and that it cannot escape liability for his conceded negligence.

BARNES, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed October 15, 1918. Rehearing denied October 25, 1918. *Certiorari* denied by Supreme Court (making opinion final).

MILLER, GORHAM & WALES, for appellant.

RICHARD J. FINN and MAX N. BLOCK, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The plaintiff below, who is appellee here, obtained a judgment on the verdict of a jury in an action on the case for personal injuries sustained by him while a passenger upon a street car which collided with an ice wagon. The declaration alleged negligence of the defendant in the management and control of the wagon and the team drawing the same. Appellant filed a special plea denying that it possessed or controlled the team or wagon at the time in question. The issues raised by this plea are the only matters argued here.

Appellant contends the court should have directed a verdict for it, and, if not, that the verdict rendered was against the weight of the evidence.

Appellant was incorporated in Illinois on the 11th day of January, 1905. Its object as stated was "to cut, store, buy, sell and deal in ice at wholesale and retail," and its principal office was in Chicago. The subscribers to its capital stock and directors were William, Herman E., Henry and Ferdinand Oetting, who were brothers, and Fred W. Miller. The stockholders were Henry Oetting, Herman Oetting, Charley Oetting, Charley Miller and Mrs. Miller. The Millers were relatives of the Oettings. William Oetting was elected

the president of the corporation and his brother, Herman, its secretary.  At the time of the incorporation, and prior thereto, these stockholders were in the retail ice business in Chicago, operating on their respective individual accounts and from different offices, but they sometimes used on their wagons the name "Oetting Bros." and at other times "Oetting Bros. Ice Company."    The Chicago office of the appellant corporation was located at 1725 West 15th street in Chicago. This property was then, and ever since has been, owned by William Oetting.  The title is in his name, the purchase price was paid by him, and he has at all times personally paid the taxes levied upon it.  With funds from his personal bank account he purchased and paid for the wagon and horses which were involved in the accident, and from the same account he paid the wages of George Girodae and Charles Peterson, who were in charge of the team and wagon at the time of the accident.  William Oetting testifies the wagon was owned by him personally, and that the driver and his helper were working for him personally and not for the corporation.

The company owned two ice houses, one at Camp Lake, Wisconsin, and another at Channel Lake, Illinois, in which places its ice was manufactured.  The ice used in the retail business transacted by each of the Oettings as aforesaid was paid for by their individual checks.  The office of the appellant corporation was also the personal office of William Oetting.

There was painted on the wagon in use at the time of the accident the words "Oetting Bros. Ice Company, Channel & Camp Lakes."  This wagon was kept with other similar wagons at the office of the corporation which bore in large letters across the front of it a sign, "Oetting Bros. Ice Company," and just above the door the word "Office."  These were the only signs of ownership appearing on the building.

The stationery used at the place of business was

paid for by the corporation and it furnished the sta-
tionery for the retail establishments. All this station-
ery was in the name of the corporation, Oetting Bros.
Ice Company. The sale slips used by the men driving
the wagon were in the name of the corporation and the
bills rendered to the customers were made out in the
same way, "Oetting Bros. Ice Company, Main Office,
1725 West 15th Street." The name of William Oetting
did not appear on the stationery or wagons. There
was not anything about the place to indicate that Wil-
liam Oetting personally owned or controlled the busi-
ness. Checks in payment of ice delivered at retail
were sometimes made out to the order of William Oet-
ting—sometimes to the order of the corporation.
These checks were always either turned over to Wil-
liam Oetting or credited to him. The ice delivered just
prior to the accident was billed in the name of the cor-
poration, and payment for it was made by a check
drawn to the order of the corporation.

The customers testified, presumably as a conclusion
from the course of dealing, that they were dealing with
Oetting Bros. Ice Company, a corporation. Even the
driver, though he testified that he was working for Wil-
liam Oetting, evidently supposed at the time of the
accident that he was working for Oetting Bros. Ice
Company, for it was proved that he so stated at the
time of the accident, and made an affidavit to that ef-
fect later.

William Oetting had a desk in the office at 1725 West
15th street and conducted his personal business there.
He was assisted by one M. J. Nolan, who in winter
worked for him personally, and in summer for the
corporation. Nolan was paid by the corporation, but
in fact worked also for William Oetting and kept books
and took telephone messages for both.

Appellant contends that the burden of establish-
ing the fact of possession and control was upon the
plaintiff; that the inferences or presumptions arising

from the use of the name on the wagon do not shift that burden, and that the presumption disappears when met, as here, by substantial evidence to the contrary. *Graves v. Colwell,* 90 Ill. 612; *Potts v. Pardee,* 220 N. Y. 431. Further, that the presumption of possession and control cannot stand in the face of undiscredited testimony that the team and wagon were actually in the possession and control of a third party. *Foster v. Wadsworth-Howland Co.,* 168 Ill. 514. If proof of possession and control rested alone upon the presumption arising from the fact that the name of the corporation was on the wagon, the rule announced would be controlling, but it does not rest upon any one presumption arising from any one particular fact. On the contrary, it rests upon presumptions arising from many proved facts and from a state of facts which existed for years and shows a usual course of business amounting to a representation on the part of the corporation that it was in possession and control.

The question here, we think, was for the jury, and we are not disposed to set aside the verdict. It was said in *Denver & R. G. R. Co. v. Gustafson,* 21 Colo. 393, that: "When one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable, as a master, for the negligence of such servant, when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom such service is rendered has not employed or paid the servant." (See also Cooley on Torts, 3rd Ed., vol. 2, p. 1008.)

In view of the fact that defendant allowed the ice business of William Oetting to be conducted in its name as aforesaid, advertising his office as its office, furnishing for use in his retail business stationery and bills bearing its own name, permitting collections from his customers to be made in its name and the wagons to bear its name and the driver to act as its servant to

326    APPELLATE COURTS OF ILLINOIS.

Wise v. Oetting Bros. Ice Co., 212 Ill. App. 321.

such an extent that he even believed he was, and knowing and permitting all this for the benefits that would accrue to it from such advertising, we think the jury were justified in finding that the driver was its servant, in the legal sense in which that term is employed, and that it cannot escape liability for his conceded negligence. Cooley on Torts (3rd Ed.), vol. 2, p. 1006; *North American Restaurant & Oyster House v. McElligott,* 227 Ill. 317; *Heywood v. Ogasapian,* 224 Mass. 203.

*Affirmed.*

MR. JUSTICE BARNES dissenting.

I cannot agree with this conclusion because, as appears from the opinion, the negligence was conceded, and the ultimate fact left for determination was whether the driver of the wagon was defendant's servant or under its direction or control. The evidence, however, was undisputed that said driver was actually the servant of William Oetting, engaged in his business alone and not in any business for defendant, and was in nowise under its direction or control. The language cited in the opinion and quoted by Cooley from the Colorado case, *supra,* applied to a state of facts where the negligence charged was that of one in the course of rendering services for the defendant with its knowledge and consent. The logic of the above opinion is not to decide the case on the theory that the jury found a necessary ultimate fact from contradictory evidence, but upon a principle of law that is not applicable to the undisputed facts.