## GUEST v. WABASH R. CO.
### No. 8620.

Circuit Court of Appeals, Seventh Circuit.

Feb. 1, 1945.

Rehearing Denied March 5, 1945.

Elmer W. Freytag and Kenneth B. Hawkins, both of Chicago, Ill., for appellant.

Royal W. Irwin, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Plaintiff sued to recover damages and won a verdict and a judgment which evidenced the jury's estimate of the amount he should receive for injuries sustained when a defective freight car door fell on him, from a moving train. This appeal is from that judgment.

The accident occurred, September 8, 1941, about 6 P.M. while plaintiff a section worker, was lounging, after work, outside the bunk car in which he lived in the "Landers Yards" located in Chicago at 79th Street. At the time the door fell, the car was being moved as a part of a train composed of defective cars, on a track adjacent to the bunk car.

The action was thrice tried: The first resulted in a jury disagreement; the next in a verdict which was set aside upon the defendant's unopposed motion. The third trial resulted in the verdict and judgment here combated.

Appellant assails the judgment from four angles. It charges the court erred:

(1) In denying its motion for a directed verdict, because (a) the evidence failed to show any negligence on its part, and (b) if its first urge be not accepted, it owed no duty to plaintiff other than that to a licensee and the evidence failed to show any breach of such duty;

(2) Because of error in refusing to direct a verdict when the evidence showed affirmatively and conclusively that the plaintiff was guilty of contributory negligence;

(3) In its instructions to the jury; and

(4) In rulings on admission of evidence.

The photograph here reproduced, informs, better than words, the car and track situation at the scene of the accident.

these laborers and also provided them with a cook whose salary it paid. The men paid for their food, which the cook prepared. Several co-workers lived in the same car, while others chose to live outside the yards. Plaintiff's residence in the bunk car was not compulsory. It was optional with him, whether he lived there or away from the yards in a Chicago boarding house. This bunk car was located about 35 feet from the lead track where the defective cars were being switched in numbers, as a train.

On the day of the accident, plaintiff returned from work about 4 P.M. and cleaned up, finished his evening meal and was sitting on a tie in front of the bunk car. He was resting and relaxing while enjoying a cross word puzzle.

Some of his co-workers had been lounging or relaxing in front of the bunk

Plaintiff was a worker in a section crew, employed in repairing and maintaining defendant's road bed and tracks. He received 45¢ an hour and had worked for about six years during the spring and summer months, receiving approximately $500 to $600 a season. Defendant furnished a "bunk car" for the convenience of

car with him, but left, to pursue other recreations, before the accident. He was cognizant of the movement of the trains, or groups of cars, but paid no attention to them.

The train carrying the bad order car was backed in on the lead track. The engine had not passed plaintiff. The track

was somewhat curved and the locomotive crew could not see plaintiff as they backed the train down the track. There was no negligence alleged from this fact.

The car door fell on plaintiff as it passed the point where he was sitting. It was a large steel door, five feet seven inches wide and nine feet eleven and one-eighth inches high and weighed approximately 500 pounds. It moved on rollers on a track on the bottom, and there was a guide—an angle iron—on top which held the door in place.

On the day before the accident, while the car was at the 14th street freight station, defendant's employee, Wyrick, an experienced car inspector, noticed the door was out of order. Its top part was one inch out from under the top guide, for about 20 inches of the door's width. The door had an outward bulge of $7/8$ inches and there was a $7/16$ inch wear in the door tracks.

The car inspector testified that when he discovered the condition of the door he tried, with a crowbar, "to fix it," that is, to replace the door on the track. He tried to place the top back under the guide. He said he couldn't move it. He then tried to pry off the entire door but couldn't, nor could he move it "back and forth at all." He then had the car unloaded, and a bad order notice placed on the outside. Appellant then moved the car to 79th Street and in time it reached the track in the Lander's Yards.

Our first problem is to determine plaintiff's status (as to defendant) when he was injured. Was he a licensee—or an invitee? If a licensee, so it is argued, he was in the same position as a trespasser to whom the defendant was not liable for in-

jury damages unless its action was wilfully or wantonly negligent. If he were an invitee, then defendant owed plaintiff a higher duty. It was liable to him if it was guilty of a want of ordinary care which resulted in his injury and without negligence by him which contributed to the injury.

■ In the law of negligence it is generally stated that as to the invitee,[1] ordinary care must be exercised by the railroad to see the invitee be not injured.[2] As to a licensee[3] (or trespasser) the duty is generally held to be one of refraining from wilful or wanton acts which inflict injuries.

Many are the cases which involve a railroad's liability for injury caused by falling of objects connected with, or carried by, its trains (including the falling of train doors[4]), and they have been carefully collected in the A.L.R. Annotation, 112 A.L.R. 850.

■ We are convinced that upon the facts disclosed by the record before us, plaintiff was an invitee. Significant, and well-nigh controlling, is the fact that defendant supplied the cook and paid his wages. In other words, it provided lodging (without charge) and part of the board (the cook's wages). It is difficult, if not impossible, to explain defendant's action in paying the cook's wages on any theory consistent with its trespasser or licensee contention. We can hardly assume that defendant was generously making a gift to plaintiff. It was supplying lodging and part of the board to plaintiff, its employee, as part of his compensation.

■ The status being established and the rule of liability stated, we now turn to the evidence to ascertain whether it

---

[1] As stated in the case of Bennett v. Railroad Co., 102 U.S. 577, 585, 26 L. Ed. 235, the distinction between an invitee and a licensee lies principally in that "invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." The same test has been applied in Illinois as recently as 302 Ill.App. 99, 23 N.E.2d 359, Brett v. Century Petroleum. See also, American Jurisprudence, "Railroads," Sec. 426; Restatement of the Law of Torts, Sec. 330 et seq. and the Illinois Annotations thereto, in the supplement of the restatement.

[2] American Jurisprudence, Railroads,
Sec. 426, and Negligence, Sec. 96; Bennett v. Louisville & N. R. Co., 102 U. S. 577, 26 L.Ed. 235; North American House v. McElligott, 227 Ill. 317, 81 N. E. 388; Faucksner v. Wakem. 231 Ill. 276, 83 N.E. 202, 14 L.R.A.,N.S., 1118; Purtell v. Philadelphia Co., 256 Ill. 110, 99 N.E. 899, 43 L.R.A.,N.S., 193, Ann. Cas.1913E, 335; Milauskis v. Terminal, 286 Ill. 547, 122 N.E. 78.

[3] McClelland v. B. & O., 7 Cir., 123 F. 2d 734; American Jurisprudence, Sec. 104, "Negligence".

[4] Maher v. Chicago, M. & St. P. R. Co., 7 Cir., 278 F. 431; St. Louis, I. M. Co. v. Neely, 63 Ark. 636, 40 S.W. 130, 37 L.R.A. 616.

discloses a want of ordinary care on the part of defendant. On this issue, we are clearly satisfied that a jury question was presented. This controversy is not over the door being defective. That was established. Its defective condition was known to defendant. The company was sending the door to the repair department for repairs.

The one defect in the car was in the door and the defect in the door was such that the inspector believed, and had reason to believe, that it might fall in transit. With the use of a crowbar he endeavored to remove the door so that it would not fall off while the car was in transit. He was unable to do so. Undoubtedly his effort to remove it accentuated the defect and made its falling more probable.

The jury could hardly have drawn any other conclusion than that the inspector's efforts to remove the door were due to his belief that it might fall in transit. Moreover, the door did fall, and this fact confirms the inspector's fears of such a happening. Unfortunately he contributed to the result and made it more certain to occur when he used the crowbar in an endeavor to remove the door. His efforts bore fruit, later, when the defective door fell as it passed the plaintiff.

■ *Contributory Negligence.* The issue presented by defendant's charge of contributory negligence, in our opinion, necessitated the trial judge's submission of this case to the jury.

We can not say that there was no evidence in support of the finding in plaintiff's favor on this question. Like unto many cases of a similar character, we are convinced that the evidence was sufficient to support a verdict either for or against the plaintiff on this evidence on this issue.

The specific statement of the evidence bearing on this issue, and a discussion thereof, seem unnecessary and unwarranted.

■ The appellant contends that the court erred in excluding certain evidence, namely, Rule 1022, which provides:

"Employees must not remain near the track when trains are passing, as coal, stone, car doors, or other articles are liable to fall from the train. On double track they must stand outside and clear of both tracks while trains are passing. All employees are further warned that they must not rely on others to notify them of the approach of a train."

It argues that because the jurors might not be aware of the danger of objects falling from passing trains, it sought to show that plaintiff had such knowledge and had been warned of such danger. In his applications for employment, plaintiff stated that he had been furnished copies of the rules and would read them.

Defendant stresses the point that plaintiff's knowledge of the contents of this rule bore upon the issue of contributory negligence. The application for employment states that "the performance of his duties would expose him to great danger, that he must use proper and constant care to avoid injury and that he had received and would read the Book of Rules and Regulations of the company and would make himself familiar with them."

There was an extended colloquy between counsel and the court on the admissibility of the rule, which is here set forth:

"The Court: I think the part you just read gets over to the jury what you are talking about.

"Mr. Hawkins: Could we make it this way, Mr. Irwin: Persons are warned that coal, stone, car doors or other articles are liable to fall from trains?

"Mr. Irwin: Take it as you find it. We are not putting anything in that isn't there.

"Mr. Hawkins: We will make it 'employees.'

"Mr. Irwin: No, you will take it as you find it. We are not putting in employees.

"Mr. Hawkins: You have to have a predicate.

"The Court: I think you should tell the jury in the following rule—the following language appears, these articles may fall from the train. That makes sense.

"Mr. Hawkins: With that understanding, so there will be no mistake, I will be permitted to state to the jury that Rule 1022 states, among other things—would that be proper? That Rule 1022 states, among other things, that coal, stone, car doors or other articles are liable to fall from trains?

"The Court: I think that is all right.

"Mr. Hawkins: So, first, of course, to save the record, the rule—

"The Court: The entire rule.

"Mr. Hawkins: The entire rule will not be permitted, to which objection is taken. The second is the offer to read that which we have just dictated and that will be

permitted. So I won't make any error, I would like to quote again, Rule 1022 states, among other things, that coal, stone, car doors or other articles are liable to fall from trains.

"The Court: Very well."

This record fails to show any adverse ruling by the court.

■ Appellant complains because the court refused to give one of its tendered instructions dealing with the duties of a licensee. We reject this assignment of error because the evidence left no room for controversy as to the plaintiff's status. He was an invitee. This being so, the court properly refused to charge on the duty of appellant to a licensee. Such an instruction would have been irrelevant and superfluous.

Moreover, if appellant owed no duty to plaintiff save to refrain from wilful or wanton negligent acts, then there was nothing for the jury to pass on. For the evidence does not justify a finding of wanton or wilful negligence. So the issue was over the plaintiff's status. The court properly instructed the jury as to appellant's duty in case plaintiff was an invitee.

Plaintiff could not have been, nor was he, expected to remain within the box car during the whole of his leisure hours, especially on a warm summer evening. The railroad placed his bunk car home only 35 feet from the lead track. It left him little choice of a spot to sit. The jury could well have found that plaintiff was not negligent when he seated himself at a place which appellant chose for him when it placed its bunk car at the place shown in the photograph.

The judgment is affirmed.