STATE EX REL. MORE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 3,571.)

(Submitted November 9, 1914.  Decided November 16, 1914.)

[143 Pac. 1193.]

*Certiorari—Liquor Licenses—Right of Appeal—District Courts —Jurisdiction—Parties—Stipulations.*

Liquor Licenses—Who may Appeal.
1. *Held,* on *certiorari,* that the right of appeal from a decision of a board of county commissioners granting a license to sell liquor in an unincorporated place notwithstanding remonstrance, can, under section 3, Chapter 35, Laws of 1913, be exercised by no less number of interested and qualified freeholders than is required in support of the petition for license, *viz.,* twenty, and that therefore an attempted appeal by one only of twenty-eight remonstrants was ineffectual to clothe the district court with jurisdiction to hear the appeal.

[As to who may appeal as an interested or injured party, see note in 119 Am. St. Rep. 740.]

Same—Appeal—Parties—Stipulations—Jurisdiction.
2. On appeal from a decision of a board of county commissioners granting a liquor license, neither it nor any of its members was a party to the proceeding; hence a stipulation between counsel for the board and an appealing protestant, as to the facts involved, made without notice to the petitioner for license, had no binding force upon the latter, and the district court in hearing the appeal upon such stipulation acted without jurisdiction, rendering the resulting order canceling the license void.

Original application for writ of *certiorari* by the state on the relation of A. M. More to review the action of the district court of Hill county and John W. Tattan, a judge thereof, in directing a liquor license theretofore issued to relator to be canceled.  Order annulled.

*Mr. F. W. Turcotte,* for Relator, submitted a brief and argued the cause orally.

*Mr. J. K. Bramble,* for Respondents, submitted a brief.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On July 21, 1914, A. M. More presented to the board of county commissioners of Hill county his petition, duly signed

49 Mont.—37

by the required number of qualified freeholders, requesting that a license be issued to him to engage in the retail liquor business at Hingham, Montana. Due notice was given, and on August 25 Frank Spaulding and twenty-eight other freeholders residing within the village of Hingham presented their protest. After a hearing the board on September 16 granted the petition and ordered the license to issue. On September 19 Spaulding, alone of the protestants, gave notice of appeal to the district court in and for Hill county from the order granting the license. A transcript of the proceedings before the board, duly certified, was transmitted to the clerk of the district court and the proceeding docketed. On October 22 the county attorney of Hill county, acting for the board of county commissioners, and the attorney for the appealing protestant entered into a stipulation as to the facts involved, and upon such stipulation the district court, without notice to the petitioner and without any opportunity on his part to be heard, entered an order reversing the order of the board and directing that the license which had been issued to the petitioner be canceled. Thereupon this proceeding in *certiorari* was instituted. Of the questions argued in the briefs, but two need be considered at this time.

1. The statute governing the issuance of liquor licenses is found in Chapter 35, Laws of 1913. Section 3 prescribes the [1] procedure before the board of county commissioners and upon appeal to the district court. That same section provides: "From the decision of the board of county commissioners the applicant for license or the protestants against the issuance thereof, may appeal to the district court," *etc.* It was within the power of the legislature to grant the right of appeal to any protestant, but it was not done. The theory upon which the statute proceeds is, that the question whether a license shall issue for the conduct of the saloon business in any unincorporated place is one which primarily concerns the immediate community. On the one hand, the mere desire of an individual to procure such license is regarded as of no consequence. The petition for license must have the support of at least twenty

freeholders who reside within ten miles of the place where the business is to be conducted; and unless, in a given instance, the petition bears the signatures of the required number of qualified persons, the board of county commissioners does not acquire jurisdiction of the subject matter and cannot proceed. On the other hand, the statute declines to give recognition to the opposition of a single individual, or a comparatively few individuals, to the issuance of such license. To make the opposition effective for any purpose, a remonstrance or protest must be filed with the board bearing the signatures of at least twenty freeholders of the village, camp or township where the business is sought to be conducted.

If this theory of the legislation is correct—and we think it is —then it becomes apparent that in section 3 above, the term "protestants" was used advisedly, and that to secure a hearing at any stage of the proceeding there must be at least twenty interested and qualified freeholders who make known their opposition in the manner indicated by the statute. If it is ever desirable that the right of appeal be conferred upon a less number of protestants, the legislature and not the courts must make the change which will confer the right. The attempt by one protestant only to appeal in this instance was ineffectual for any purpose, and failed to clothe the district court with jurisdiction to proceed.

2. In case an appeal is taken from an order of the board granting or refusing a license, it "shall be taken and heard in the same manner as appeals from justices' courts." (Sec. 3 above.) The hearing before the board is analogous to a trial before a justice of the peace. The petitioner for the license is the plaintiff; the protestants are the defendants, and the board of county commissioners is the court. (*State ex rel. Hackshaw* v. *District Court,* 48 Mont. 477, 138 Pac. 1100.) Upon such hearing the board exercises *quasi*-judicial powers. (*State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297; *State ex rel. Arthurs* v. *Board of County Commissioners,* 44 Mont. 51, 118 [2] Pac. 804.) Upon appeal to the district court neither the

board nor any of its members is in any sense of the term a party to the proceeding; and neither the board "nor any member of it has any interest in the proceedings, other than such as a justice of the peace has in an ordinary action removed by appeal from his court." (*State ex rel. Hackshaw* v. *District Court, supra.*)   Even assuming, for the purposes of this argument, that protestant Spaulding alone could prosecute an appeal, the stipulation made by him and the board of county commissioners as to the facts governing this proceeding was a mere nullity and furnished no basis whatever for a decision by the court.   The petitioner More could not be denied his day in court.   His rights in this instance were either ignored altogether or attempted to be stipulated out of existence by the board, which was not a party to the proceeding and not concerned in the outcome.   It would be a most absurd anomaly in the law to permit a justice of the peace before whom a trial had been had to go into the district court when the cause is removed there by appeal, and stipulate with the party losing below that the judgment he had rendered was erroneous and might be reversed—and all without notice to the party who prevailed in the justice of the peace court.

Because the board of county commissioners was not a party to this proceeding in the district court and not interested in the outcome, its stipulation as to the facts was of no value, and could not bind the petitioner for the license.   The district court in its trial of the proceeding upon such stipulation, without notice to the petitioner or an opportunity upon his part to be heard, acted without jurisdiction, and the resulting order was null and void.

The order of the district court is annulled and set aside.

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.