In Re Application of DALE R. PEPPER for License to Sell Intoxicating Liquor.

(*June* 25, 1947.)

SPEAKMAN and CAREY, J. J., sitting.

*Daniel J. Layton* for certain protestants.

*Frederick P. Whitney* for the applicant.

Court of General Sessions for Sussex County, April Term, 1947.

CAREY, J., delivering the opinion of the Court:

We shall refrain from deciding the constitutional question raised by the motion to dismiss. Courts ordinarily do not consider constitutional matters unless a decision can be reached on no other ground. *Cantor vs. Sachs*, 18 *Del. Ch.* 359, 162 *A.* 73.

■ We therefore turn to the applicant's second contention, namely, that the appeal must be dismissed because it is signed by only four of the protestants, whereas, he says, at least ten, or perhaps all, are required to join in order to perfect an appeal. The Act itself is not so clear on this point as might be desired; nevertheless, we are of the opinion that the legislative intent can be deduced from the language of the statute itself. The pertinent parts are as follows: "If the Commission has determined to grant an application, but before the issuance of the license applied for and within ten days of the filing of said application, a protest against the issuance of said license, signed by at least ten residents of the neighborhood where the license is to operate, has been filed with the Commission, then a hearing shall be held to consider said application and protest * * * such hearings shall be conducted by the Commission * * *. The Commission's decision shall be final and conclusive unless within ten days after notice thereof the parties to such hearing shall appeal to the Court of General Sessions of the County in which the license would operate. * * *" *Rev. Code* 1935, § 6150, as amended by 43 *Del. Laws*, c. 275, § 2.

In the section quoted above, the term "parties to such hearing" necessarily means the protestants. Our reason for saying this becomes clear when it is recalled that the right of appeal by an applicant is granted and controlled by another section of the original statute, to wit, *Section* 22, *Code Section* 6151, as amended by *Ch.* 262, *Vol.* 45, *Laws of Delaware*, p. 982. Obviously, then, the phrase can refer only to protestants. It is equally obvious that one of the principal purposes of the amendment is to grant a statutory right of appeal to protestants.

■ Now, it is significant that the Legislature used the collective term "parties to such hearing" in describing who shall have a right of appeal. If the privilege was to be

granted to any one or more of the protestants, a more appropriate description could have been employed. Taking the words in their literal sense, therefore, it would appear that all protestants must join in the appeal. But we must look further because it is elementary that Courts will apply a singular meaning to a plural word when that is the apparent intent and meaning of the lawmaking body.

On behalf of the protestants, it is pointed out that a strict or literal interpretation would lead to a rather anomalous situation. Assuming that all original protestants must join in an appeal, and assuming there were 200 objectors in a given case but, prior to the filing of the appeal, one of them dies, the right of the other 199 would be lost; yet if the deceased had not originally protested, those 199 could appeal. We cannot believe that the Legislature intended any such result, especially when we remember that ten of those people would have been a sufficient number in the first instance.

On the other hand, can it be said that one protestant has such an interest in the matter that he alone can appeal? Again, we cannot conceive such an intent on the part of the Legislature. If one has such a right, why is he not given the power to demand a hearing before the Commission in the first place? In our opinion, the Legislature undoubtedly felt that the protest of a reasonable number of residents, or of a representative group of the community, ought to be required before a trial of the issue is permitted, and it has fixed ten as being that reasonable number. Unquestionably, one or two persons could be found in every community who would object to an application for a license for conscientious reasons or from personal motives and, apparently, it was that very kind of protest which the Legislature was seeking to guard against. The granting of liquor licenses being a matter of public moment, it was no doubt desired to prevent

a small number from creating litigation in every case regardless of how material the license might be to public convenience. As was said in *State vs. District Court,* 49 *Mont.* 577, 143 *P.* 1193, 1194, concerning a somewhat similar statute which gave the right of appeal to "protestants": "It was within the power of the Legislature to grant the right of appeal to any protestant, but it was not done. The theory upon which the statute proceeds is that the question whether a license shall issue for the conduct of the saloon business in any unincorporated place is one which primarily concerns the immediate community. * * * On the other hand, the statute declines to give recognition to the opposition of a single individual, or a comparatively few individuals, to the issuance of such license. To make the opposition effective for any purpose, a remonstrance or protest must be filed with the board, bearing the signatures of at least 20 freeholders of the village, camp, or township where the business is sought to be conducted. If this theory of the legislation is correct—and we think it is—then it becomes apparent that in section 3 above the term "protestants" was used advisedly, and that to secure a hearing at any stage of the proceeding, there must be at least 20 interested and qualified freeholders who make known their opposition in the manner indicated by the statute. If it is ever desirable that the right of appeal be conferred upon a less number of protestants, the Legislature, and not the courts, must make the change which will confer the right. The attempt by one protestant only to appeal in this instance was ineffectual for any purpose and failed to clothe the district court with jurisdiction to proceed".

The reasoning of the Montana Supreme Court is sound and is applicable to the case at bar. Our Legislature has required a protest by at least ten residents to secure a hearing; the same reasons which prompted that requirement oper-

ate equally as strongly in the taking of an appeal; the reasonable assumption, from the words used, is that the same prerequisite was intended. We are of the opinion that an appeal under the Act must be taken by at least ten protestants; otherwise the jurisdiction of this Court has not been properly invoked. This appeal must accordingly be dismissed.