Walter Curtis, Minor, by J. R. Curtis, Father and Next Friend, Hubert Bradley and J. R. Curtis, Appellees, v. Edward Gedman and Melvin Lowe, Appellants.

Gen. No. 10,292.

464

468

Opinion filed September 29, 1949. Re-
leased for publication October 18, 1949.

SNYDER, CLARKE & DALZIEL, of Waukegan, for certain
defendant; GERALD C. SNYDER, of Waukegan, of coun-
sel.

HALL, MEYER & CAREY, of Waukegan, for certain
other appellant; WESLEY G. CAREY, of Waukegan, of
counsel.

BERNARD J. JURON and LIDSCHIN & PUCIN, all of
Waukegan, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an action by plaintiffs, Walter Curtis, J. R. Curtis and Hubert Bradley to recover damages arising out of an automobile accident which occurred on Sunday afternoon, July 1, 1947 at the intersection of May and Utica streets in the City of Waukegan.

Count one of the complaint alleges that the plaintiffs, Walter Curtis and Hubert Bradley, upon the occasion in question, were guest passengers in a car then being driven by defendant, Melvin Lowe, in a westerly direction on May street; that Utica street is a public highway running north and south and that as the car driven by Lowe proceeded westerly on May street, the defendant Lowe was guilty of numerous specified acts of wilful and wanton misconduct and that by reason thereof the car in which this plaintiff was riding came in contact with the automobile being driven by Edward Gedman and plaintiff, Walter Curtis, was thereby injured. This count prays for judgment on behalf of plaintiff, Walter Curtis and against the defendant, Melvin Lowe. Count two makes the same charges on behalf of plaintiff, Hubert Bradley and against the defendant, Lowe and prays judgment against this defendant and in favor of the plaintiff, Hubert Bradley. Count three makes the same allegations as to the location of the streets and operation of the automobiles by the defendant, Lowe, and alleges that defendant, Gedman, was driving an automobile south on Utica street and charges that he, Gedman, was guilty of specified acts of negligence and carelessness and that by reason of such negligence and carelessness the car in which this plaintiff was riding came in contact with the Gedman car and as a result thereof this plaintiff, Walter Curtis was injured and he demands judgment against defendant, Edward Gedman. Count four makes the same allegations on behalf of the plaintiff, Hubert Bradley and against the defendant, Edward Gedman and demands judgment against

defendant, Gedman. Subsequently two additional counts were filed making J. R. Curtis a party plaintiff. The first additional count alleged that this plaintiff, J. R. Curtis, is the father of Walter Curtis, a minor. It adopts the allegations of wilful and wanton conduct on the part of defendant, Lowe, as set forth in count one and avers that this plaintiff was compelled to expend money for hospital, medical and other services rendered to his minor son and that he, the father will be deprived of large gains and profits which he otherwise would be entitled to receive because of the loss of earnings which would have accrued to his minor son, Walter Curtis. This count prays judgment in favor of the plaintiff, J. R. Curtis and against the defendant, Melvin Lowe. The second additional count makes the same allegations on behalf of the plaintiff, J. R. Curtis with respect to the highways and the negligence of Gedman as were made in the third count and prays judgment against the defendant, Lowe.

The defendants filed separate answers. The defendant Lowe denied all the charges of wilful and wanton misconduct and the defendant Gedman denied all the allegations of negligence. The issues thus made were submitted to a jury and the jury returned three general verdicts. (1) In that part of the case in which Walter Curtis is plaintiff, the jury found both defendants guilty and assessed the damages of the plaintiff at $15,000. (2) In that part of the case in which Hubert Bradley was plaintiff the jury found both defendants guilty and assessed the damages of this plaintiff at $5,000. (3) In that part of the case in which J. R. Curtis is the plaintiff, the jury found both defendants guilty and assessed the damages of this plaintiff at $3,000. Each defendant filed a motion for judgment notwithstanding the verdict and a motion for a new trial. These motions were denied and judgments were rendered upon the several verdicts in favor of the respective plaintiffs and against both defendants.

To reverse these judgments each defendant has perfected a separate appeal and filed herein his separate brief.

Upon the trial each defendant was represented by his own counsel. During the examination of the jury on their *voir dire* the question arose as to the number of peremptory challenges each defendant was entitled to exercise. The trial court stated to counsel that inasmuch as there were three plaintiffs and two defendants, the defendants were to be considered as one party and that collectively they were entitled to five peremptory challenges, plus three additional challenges for each additional plaintiff more than one or six additional challenges making a total of eleven challenges to be exercised by the two defendants. The court further stated that had the question been presented to him at the beginning of the examination of the jurors he would have suggested that counsel for the defendants agree that each defendant would have five challenges and that they determine by lot which defendant would be allowed the sixth challenge. Inasmuch, however, as the question did not arise until after some of the peremptory challenges had been exercised the court held that he would allow each defendant to exercise six peremptory challenges. The examination of the jury was resumed and after counsel for defendant, Melvin Lowe, had exercised six peremptory challenges, he peremptorily challenged Elsie Inglis, one of the jurors. Upon the objection of counsel representing defendant, Edward Gedman, the challenge of defendant Lowe, was overruled and Elsie Inglis was duly sworn as a member of the panel which tried the case.

It is the contention of counsel for defendant Lowe, that since there were three plaintiffs and two hostile defendants that this defendant was entitled to fourteen challenges. Counsel arrives at this number by adding to the base number of five challenges, nine additional challenges being three additional challenges for each

plaintiff. If in error in this computation counsel for this defendant then insists that under the applicable provision of the Practice Act both defendants must be held to be entitled to fourteen challenges or seven challenges to each.

At common law no right existed to challenge any juror without showing cause therefor in civil cases. Peremptory challenges are a matter of statutory creation and statutes of this character are subject to the same rules of construction as other statutes. (*Gordon v. City of Chicago,* 201 Ill. 623.) The first sentence of the present Practice Act is a re-enactment of the Act of 1872, except as to the number of challenges which was increased in 1907 from three challenges to five.

The present Civil Practice Act (Ill. Rev. St. 1947, ch. 110, sec. 66, par. 190 [Jones Ill. Stats. Ann. 104.066]) provides: "In all Civil actions each party shall be entitled to challenge five jurors without showing cause for such challenges. Where there is more than one plaintiff, or more than one defendant, the judge shall allow additional challenges not to exceed three in number to each additional plaintiff or defendant without showing cause."

In *North American Restaurant & Oyster House v. McElligott,* 227 Ill. 317, the court held that the provision of the statute prior to 1907 allowing three peremptory challenges meant three challenges to each side of the case and the fact that there was a difference in the grounds of defense set up by different defendants did not increase the number of challenges. In *Schmidt v. Chicago & N. W. R. Co.,* 83 Ill. 405, the court at page 407 after quoting the provisions of the statute to the effect that each party was entitled to challenge three jurors without showing cause therefor went on to say: "This provision has been in force since 1827, if not longer, and, as we understand, during all that time it has been the general practice, and so

understood by the entire profession, that each side to the case, without reference to the number of persons in each, in all civil cases, have but three peremptory challenges; and this is true whether there be one or a number of persons plaintiff or defendant.''

One of the cardinal rules in the construction of statutes is that words are to be given their ordinary and well understood meaning at the time the statute is adopted or re-enacted (*Holmes v. Fanyo,* 326 Ill. App. 624–630; *Arnold v. City of Chicago,* 387 Ill. 532–539). And where a statute is adopted or re-enacted containing words or phraseology that has previously been construed by the courts, it will be presumed such provisions and phraseology were incorporated in the re-enacted statute with the judicial construction already placed upon them. (*Kirby v. Runals,* 140 Ill. 289–299; *Svenson v. Hanson,* 289 Ill. 242–248.) The meaning given to the word ''party'' as used in this statute has been followed and approved in all subsequent decisions of the courts of this State involving a construction of that statute and this court is bound thereby. (*Gordon v. City of Chicago,* 201 Ill. 623–626; *Freiberg v. South Side El. R. Co.,* 221 Ill. 508–511; *North American Restaurant & Oyster House v. McElligott,* 227 Ill. 317–320.)

Appellant Lowe insists that notwithstanding the meaning given to the word ''party'' used in this section by the prior decisions of our courts, that a different construction now should be given to the meaning of the word because of the changes made in the Civil Practice Act by sections 23 and 24 of that Act [Ill. Rev. Stat. 1947, ch. 110, pars. 147, 148; Jones Ill. Stats. Ann. 104.023, 104.024] permitting a joinder of one or more persons as party plaintiff or defendant in a single action, and that the limitations of the number of challenges each party is entitled to, should not apply when the persons joined as plaintiff or defendants have, or assume to have, conflicting interests. In this

connection appellant calls our attention to several holdings in other jurisdictions where such views have been expressed. An examination of those cases, however, shows that in most of them a different factual situation was presented in which one or the other of the defendants was seeking affirmative relief against the other, or that separate and independent actions had been consolidated for trial at the same time. In none of the cases cited did the word ''party'' have a definite and fixed meaning at the time it was incorporated in the Act such as is the case in the statute now before us.

The rule is well established in this State that in the construction of statutes where the legislative intention is expressed in plain, clear and unambiguous language there is no room for construction, and effect must be given to the statute according to the meaning of the words used (*Village of Depue v. Banschbach*, 273 Ill. 574–580; *People v. Touhy*, 361 Ill. 332–345). In the statute now before us there is no uncertainty or ambiguity as to the meaning of the language used in that Act. The word ''party'' had a definite and well understood meaning at the time section 66 was amended and re-enacted and we must presume the legislature used the word according to its well understood meaning as used in the prior acts. Had it been the intention of the legislature to allow five challenges to each additional plaintiff, and to each additional defendant joined in an action where they had conflicting interests, it would have been a very simple matter for the legislature to have said so in plain and clear language. This the legislature did not do. Instead it merely increased the number of challenges to each party by three, provided more than one plaintiff or more than one defendant was joined in the same action. And, finally, it is insisted that where there are two or more plaintiffs, or two or more defendants, each party plaintiff or defendant, is entitled to three additional challenges for each additional

plaintiff and for each additional defendant, making a total of nine additional challenges each party was entitled to in the instant case. The language of the statute is that where there is more than one plaintiff, or more than one defendant, the judge shall allow three additional challenges to each additional plaintiff or defendant. The word ''or'' is a co-ordinating particle that marks an alternative, meaning one or the other of two things; but not both (*Kuehner v. City of Freeport,* 143 Ill. 92–100). We think the word was so used in this statute. Such, in effect, is the construction given this section in *Schultz v. Gilbert,* 300 Ill. App. 417–421 and *Goad v. Obernagel,* 302 Ill. App. 370–373, where it was held that in so far as this section provides for additional challenges because of the number joined as plaintiffs or defendants, it means that the parties on each side of the action are entitled to the same number of challenges irrespective of the number of persons joined as plaintiff or defendant in the suit. That the side on which there is joined the greater number of persons as plaintiffs, or as defendants, determines the number of peremptory challenges each side or party is entitled to. We concur in the views there expressed. Had it been the intention that three additional challenges should be allowed each plaintiff and each defendant so joined in the action, the drafters of the Act would have experienced little or no difficulty in selecting apt and appropriate words with which to express that legislative intention. The words used are not expressive of that intention.

 It is apparent that the legislature, by retaining the words ''each party'' intended those words to mean ''each side.'' This construction is strengthened when one considers the second sentence which provides that where there is more than one plaintiff or defendant, then an additional number of challenges shall be allowed not to exceed three to each additional plaintiff or defendant. If the legislature had intended

to extend the rule in the manner defendant Lowe contends, certainly other language would have been employed in view of the decisions of our Supreme Court. This conclusion is supported by the language used in the Criminal Code (Ill. Rev. Stat. 1947, ch. 38, par. 742 [Jones Ill. Stats. Ann. 37.727]), where the word "person" is used and not the word "party." There was no error in the ruling of the trial court in the apportionment of peremptory challenges or in sustaining the peremptory challenge of defendant, Lowe to the juror, Elsie Inglis.

The evidence discloses that at the time of the accident, the plaintiff, Hubert Bradley was 22 years of age and the plaintiff, Walter Curtis, was 18 years of age. The plaintiff, J. R. Curtis is the father of Walter Curtis. Hubert Bradley and Walter Curtis had known each other all their lives and at the time of the accident and for several months before they had lived in Waukegan and roomed together. The plaintiff, Melvin Lowe is a young man and was employed in the garbage department by the City of Waukegan and had been for several years. He testified that he had seen Bradley and Curtis prior to the day of the accident but had no acquaintanceship with them. Sunday, June 1, 1947, was a warm, rainy day. That afternoon Walter and Hubert left their room and Hubert went to Pete's Tavern about four blocks distant from their rooming house and there met Lowe. They drank some beer. Walter Curtis went to a pool hall nearby but was only there a few minutes and he then went to Pete's Tavern and there met Lowe and Hubert. According to the testimony of Lowe the three remained in the tavern about an hour. Curtis testified they were there less than ten minutes and that he had a soft drink. Lowe and Hubert drank beer. About four o'clock in the afternoon they left the tavern and got into the front seat of Lowe's car and he, Lowe, drove to a fish dock in Waukegan where Bradley bought some fish. They re-

entered Lowe's car and after entering May street proceeded west on May street toward the Utica street intersection. Utica street runs north and south. Lowe testified that he was familiar with this intersection, knew that the traffic on Utica street was protected by the usual stop sign on May street and that as he approached the intersection he was driving twenty or twenty-five miles per hour and slowed down to about two or three miles per hour, saw the Gedman car about two hundred feet north of the intersection traveling about forty miles per hour, thought he had time to cross the intersection in safety, put his car in low gear and continued into the intersection without coming to a complete stop and was going about ten miles per hour at the time of the collision.

The evidence on behalf of the appellees is to the effect that the Lowe car entered the intersection at a speed of about thirty miles per hour; that Walter Curtis called Lowe's attention to the stop sign and to the Gedman car then about one hundred fifty feet north of the intersection and approaching that intersection traveling between forty and forty-five miles per hour.

The Gedman car entered Utica street three blocks north of the May street intersection. Edward Gedman, a young man, was driving and in the front seat on the right hand side was Dennis McCall. The rear seat was occupied by Mr. and Mrs. George Murphy and their daughter, June. According to the testimony of these witnesses the Gedman car was proceeding south on Utica street being driven twenty or twenty-five miles per hour. Gedman testified that when he was about seventy-five feet north of the intersection he looked toward the east but saw no automobile coming from the east on May street, that he then looked west, saw no cars, and proceeded to drive south about twenty miles per hour, that when his car reached a point twenty or twenty-two feet north of the north curb line

of May street, he first observed the Lowe car, that it was two or three feet east of the stop sign moving between thirty or thirty-five miles per hour, that the Lowe car did not change its speed but entered the intersection without stopping, that Gedman applied his brakes but only one or two seconds elapsed between the time Gedman saw the Lowe car until the collision. The Lowe car had entered the west half of the intersection and was in Gedman's lane of traffic when the front end of the Gedman car came in contact with the rear half of the Lowe car. The force of the collision was such that the Lowe car was spun completely around and came to rest facing west with two wheels on the parkway and two wheels on the pavement and Curtis and Bradley were thrown from the car.

There was evidence that Lowe had been drinking beer throughout the day and was drunk at the time of the collision. The testimony concerning many of the details of the collision, the manner in which Gedman operated his car and the rate of speed he was traveling as he approached the intersection was conflicting. The question as to what was the proximate cause of the accident was one of fact for the jury to pass upon. The jurors saw the witnesses, heard them testify and were in a much better position to pass upon their credibility and the weight to be given their testimony than we are. The jury resolved the issues presented in favor of appellees. The trial judge who saw the witnesses and observed their manner of testifying has approved the verdict of the jury. There is ample evidence in the record to support the verdict that the proximate cause of the accident was the result of the wilful misconduct of appellant Lowe and the negligence of appellant, Gedman. From our examination of the record we are satisfied that the verdict is not so manifestly against the weight of the evidence, as to warrant a reversal of the judgment on that account.

Appellants also urge that the record discloses that the attitude of appellants toward each other was hostile and antagonistic during the trial and as a result thereof the rights of each defendant were prejudiced by such conduct on the part of his co-defendant. In other words because each defendant undertook to place the responsibility for the accident upon the other, each defendant was prevented from having as fair a trial as he otherwise would have had. There is nothing in our statute, or in the decisions of our courts which authorize a reversal of a judgment because of the theory on which appellants elect to try their case. It has long been the settled rule in this State that where a third person is injured through the combined or concurrent negligence of two or more persons, that those who participated in the act proximately causing the injury may be sued jointly, or severally at the election of the plaintiff (Sherman & Redfield, Negligence, (5th ed.) sec. 122; *Humason v. Michigan Cent. R. Co.,* 259 Ill. 462–469; *Winslow v. Newlan,* 45 Ill. 145–148; *Frank Parmelee Co. v. Wheelock,* 224 Ill. 194–200). This rule has now been extended by statute to allow a joinder of plaintiffs as well as of defendants where the cause of action arose out of the same transaction or where there is a common question of fact involved. (Ill. Rev. Stat. 1947, ch. 110, pars. 147 and 148 [Jones Ill. Stats. Ann. 104.023, 104.024].) The defendants, therefore were rightfully joined under the statute. Neither defendant was seeking any affirmative relief from the other. The negligence and wanton conduct alleged against each defendant was clear and specific. It was charged that each defendant was guilty of certain conduct which proximately contributed to the plaintiffs injuries. The concurring negligence of one defendant with the negligence or misconduct of another defendant is no defense to the specific negligence or wanton

and wilful misconduct charged against each defendant, as each defendant is liable for his own negligence or misconduct. (*Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559–563.)

The particular action complained of by appellant Lowe of his codefendant occurred in the cross-examination of the defendant Gedman by his own counsel, and in certain instructions given at the request of the defendants. It appears that shortly after the accident a trial was held in a justice court at Waukegan in which Gedman gave testimony somewhat at variance with that given on the trial. Appellees called the reporter who reported his testimony at that hearing and interrogated her concerning certain questions asked and answers given by Gedman at that time. Gedman's counsel then asked if Gedman was just a witness at that hearing; to which counsel for plaintiffs replied they were willing to so stipulate. Counsel for Gedman then asked: "Will you look at your notes at page 3 before JUDGE BROWN at this hearing in which Lowe was on trial?" Counsel for defendant Lowe objected to the question; the court sustained the objection and ordered it stricken, and instructed the jury to disregard it as well as any other testimony that had been stricken out. The same night an article appeared in a Waukegan newspaper to the effect that the attorneys representing the plaintiff revealed Lowe had been found guilty in police court as a result of the accident. Basing his motion on the above question and the newspaper article appellant Lowe moved the court to withdraw a juror and declare a mistrial. The court denied the motion. The question asked was never answered. There is no proof Lowe was ever found guilty in any action or proceeding in the police court. Neither is there any proof that any juror ever saw or read the article which appeared in the news-

paper, and had they done so they would have known the article did not contain a correct statement of the proceeding had in court that day. Under those circumstances it is difficult to see how appellant Lowe was prejudiced either by the asking of the question which was stricken, or by the newspaper article which may or may not have been seen and read by the jurors. In this State of the record the trial court did not err in denying the motion to withdraw a juror and declare a mistrial.

It is also insisted that the trial court erred in the giving and refusing of instructions. The abstract shows that fifty-one instructions were tendered the court by counsel of which the court gave thirty and refused twenty-one. The instructions are not numbered in the order they were given and there is nothing to indicate which of the instructions given or refused were tendered by the plaintiffs or which were tendered by defendant Lowe or by defendant Gedman. The only information the abstract gives is that one or the other of the defendants raised some objection to the giving of a certain numbered instruction without any indication by whom such instruction was tendered except such as may be gathered from reading the instruction itself. The instructions complained of in the briefs and argument are the giving of instructions numbered: 12, 13, 15, 21, and A, and the refusal to give instructions numbered 22, 23 and numbers 24c, 24d and 24e.

Instruction number 12 told the jury that if the negligence of one person and the wilful and wanton misconduct of another person united in causing an accident by which another person was injured, it was no defense for one of such wrongdoers to show that the other is also to blame in causing such accident. Appellants concede the instruction states the correct rule of law but it is insisted that the instruction is argumentative, and in effect assumed the defendants were

guilty of wanton misconduct and negligence. This instruction is not subject to that construction when read in connection with the evidence found in this record and in connection with the other given instructions. By the forty-seventh given instruction the jury was told that neither by these instructions or by any words or remarks made by the court, did the court intimate or mean to give, or be understood as giving any opinion as to what the facts are in the case. And by other given instructions the jury was fully and accurately told what facts the plaintiffs must prove before the jury could find their verdict against each defendant. In *Frank Parmelee Co. v. Wheelock,* 224 Ill. 194–199 a similar instruction was approved over the objection that it assumed there was negligence on the part of both defendants and that it was an abstract proposition of law. The court there stated that it had no tendency to mislead the jury as the evidence showed very clearly that each defendant was striving to throw all the blame of the accident on the other.

Instruction number 13 told the jury that if they found the facts as therein stated they should find both defendants guilty, and instruction number 15 told the jury that if they found the defendant, Edward Gedman guilty of the negligence charged against him that even though it should appear Melvin Lowe was guilty of wilful and wanton misconduct which contributed to the accident the wilful and wanton misconduct on the part of Lowe would not be imputable to the plaintiffs. The objection to these instructions is that they ignored the defense of joint enterprise or undertaking on the part of Curtis, Bradley and Melvin Lowe. In view of the fact that we are of the opinion the evidence fails to show a joint enterprise or undertaking on the part of these plaintiffs and Lowe, the instructions were proper. Furthermore Instruction No. 15 has been approved in the same form except for the

substitution of the language defining wilful and wanton misconduct for negligence in *West Chicago St. R. Co. v. Petters,* 196 Ill. 298, 303. Instruction 21, given by defendant Gedman over the objection of defendant Lowe, is as follows: "If you believe from the evidence that the defendant, Edward Gedman, without fault on his part was confronted with sudden danger or apparent sudden danger, then the obligation resting upon him to exercise ordinary care did not require him to act with the same deliberation or foresight which might be required under ordinary circumstances." Defendant Lowe contends there was no factual basis for the giving of this instruction while defendant Gedman asserts that he is entitled to have the jury instructed according to his theory of the case. The evidence found in this record, in our opinion, is sufficient to warrant the giving of this instruction. In any event defendant Gedman, who offered the instruction, was also found guilty and Lowe therefore was not prejudiced by the instruction. Instruction A involved the right of the plaintiff J. R. Curtis, father of plaintiff Walter Curtis, to damages by reason of the hospital and medical expenses he had incurred and to be incurred by him and the loss of the earnings suffered by him as a result of the injuries to his minor son. Defendant Lowe contends that this instruction should not have been given because the evidence shows that plaintiff Walter Curtis had been emancipated by his father. The defense of emancipation was not made an issue by the pleadings but the court allowed the purported defense to go to the jury as one of the questions of fact to be determined in the case. The jury found there had been no emancipation, and, under the evidence in this record, the jury were warranted in so finding.

Defendant Gedman contends that the trial court erred in not giving his instructions Nos. 22, 23, 24c, 24d

and 24e. It is the theory of Gedman that the sole proximate cause of the accident was the intóxicated condition of the defendant Lowe and his driving through the stop sign by reason of that intoxication and that he was, therefore, entitled to have the jury instructed on this theory of the case. Instruction No. 22 was as follows:

"At the time of the happening of the accident in question, there was in full force and effect a statute of the State of Illinois which provided that it is unlawful for any person who is under the influence of intoxi-cating liquor to drive any vehicle within this state. If you believe from the evidence that the defendant, Melvin Lowe, at the time of and just prior to the accident in this case was driving his car while in violation of the provisions of such statute, and that such violation, if any, was the sole proximate cause of the damage and injuries, if any, suffered by the plaintiffs in this case, then you may find the defendant, Edward Gedman, not guilty."

Instruction 24c, 24d and 24e were to the same effect except that instructions 24c and 24e were not directory. These four instructions are subject to criticism on several grounds. First of all, they stress single elements of misconduct, that of driving while intoxicated and failing to stop and give those elements undue emphasis and ignore every question of fact put in issue by the pleadings and invited the jury to render their verdict on what they thought was the sole proximate cause of the accident. Further these instructions have the implied effect of informing the jury that the intoxication of the defendant Lowe was misconduct as a matter of law. Thus, if given, they would have taken completely from the jury the alleged wilful and wanton misconduct of the defendant Lowe, which was purely a question of fact for it to determine and would have justified the jury in assuming that defendant Lowe's driving while intoxicated was wilful and wanton mis-

conduct as a matter of law. The only importance Melvin Lowe's alleged intoxication had was as to the reliability of his testimony as to the manner of his driving; and as to whether or not these plaintiffs were exercising due care for their own safety in riding with him if they knew of his intoxicated condition. The fact that Melvin Lowe may, or may not have been intoxicated at the time of the accident was no excuse for the alleged negligence of Gedman in running into him, if, by the exercise of ordinary care on his part Gedman could have avoided the accident. The claimed intoxication of Lowe had no connection with the negligence charged against Gedman, except, that it may have set up a situation for Gedman's negligence to cause the accident. As to refused Instruction No. 23, it told the jury that at the time of the accident there was a statute of the State of Illinois which required vehicles entering upon or crossing Utica street at its intersection with May street to stop and to give the right of way to vehicles upon Utica street. All five of these instructions had the common purpose of telling the jury on behalf of Gedman that Gedman had the right of way over the defendant Lowe. Whether the defendant Gedman had the right of way over Lowe depended upon additional matters not contained in instruction 23, such as the distance of Gedman's car from the intersection and his relative rate of speed as compared to Lowe's. Furthermore whatever the rights of defendants Gedman and Lowe were, as between them, the duty which each of them owed to the plaintiffs, is not affected by any question of right of way between these two defendants. That issue is not involved as between the plaintiffs and the codefendants. In *Chicago City Ry. Co. v. Lannon,* 212 Ill. 477, the question of right of way as between codefendants and an innocent plaintiff was considered and it was there said (p. 449); ''The question at issue was not as to the right of way of the street car or whether or not

the driver of the beer wagon was a trespasser liable to punishment for obstructing the car, but whether or not the servants of the appellant negligently, carelessly, wrongfully and improperly operated the car at the time it came in contact with the wagon and caused the injury to the plaintiff. Neither the offered evidence nor the refused instruction was pertinent to that issue. Conceding that appellant had the absolute right of way and that the wagon was wrongfully on the track, those facts could in no way excuse its employees in failing to exercise the highest degree of care consistent with the operation of the car for the safety of passengers riding therein, and if they were negligent in that regard, causing the accident, the company must be held liable, but not otherwise. The evidence was immaterial and the instruction inapplicable to the case.'' The same doctrine is laid down in the case of *Benson v. Chicago City Ry. Co.,* 208 Ill. App. 613 and *Chicago City R. Co. v. Schaefer,* 121 Ill. App. 334. It must also be remembered that the jury in the instant case found the defendant Lowe guilty.

Defendant Gedman also contends that the form of the verdict which the jury returned is erroneous in this case. The verdict is as follows: ''In that part of this case in which Walter Curtis (by J. R. Curtis, his father and next friend) is plaintiff, we, the jury, find both defendants guilty, and assess the damages of the plaintiff at the sum of Fifteen Thousand ($15,000.00) Dollars.'' A similar form of verdict was used for plaintiff Bradley and also for the plaintiff J. R. Curtis. Defendant Gedman's complaint is that since his codefendant, Lowe, was charged with wilful and wanton misconduct while he was charged solely with negligence, that the jury was at liberty to include in its verdicts exemplary or punitive damages against Lowe, which it had no right to return against him. This contention overlooks the rule that where defendants are charged with liability as joint tort-feasors, a

jury may not apportion the damages between them. This rule is laid down in *Koltz v. Jahaaske,* 312 Ill. App. 623, as follows (p. 627): "There is no line of separation between the liability of joint tort-feasors. Each is liable for the whole and the injured party may pursue jointly one or more, at his election, and after verdict may dismiss as to all but one defendant, taking judgment against him alone. *Nordhaus v. Vandalia R. Co.,* 242 Ill. 166, 174. The release of one or the satisfaction of a judgment against one, releases all, because a plaintiff can have but one satisfaction for his injury. When a suit is against several joint wrongdoers, the degree of culpability cannot be compared. In an action against joint tort-feasors the judgment must be for a single sum against all the parties found responsible with respect to each plaintiff, and the jury in such an action cannot apportion the damages in an attempt to sever same as to the several defendants. (Citing cases.)" In the instant case all of the given instructions directed the jury to confine their allowance to compensatory damages only. The instructions given excluded the allowance of punitive damages. Had the defendant Gedman desired an instruction to be given to the jury to the effect that exemplary or punitive damages could not be assessed against him, he should have tendered such an instruction. The record shows that the court indicated that it would have given such an instruction if one had been tendered. Under these circumstances defendant Gedman cannot now complain.

In our opinion this record is as free from error as might be expected under the circumstances. There is no reversible error therein and the judgment of the trial court is affirmed.

*Judgment affirmed.*