Carl G. AHNER and Rose A. Ahner, t/a Limestone Liquors, and Midway Beverage Mart, Inc., a Delaware Corporation, Appellants,

v.

DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and Milltown Beverages, Inc., a Delaware Corporation, t/a Milltown Beverages, Respondents.

Supreme Court of Delaware.

Dec. 29, 1967.

Edward W. Cooch, Jr., and H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for appellants.

Harvey B. Rubenstein, Wilmington, for respondent, Milltown Beverages, Inc.

William T. Lynam, III, Wilmington, for respondent, Delaware Alcoholic Beverage Control Commission.

CAREY and HERRMANN, Justices, and SHORT, Vice-Chancellor, sitting.

CAREY, Justice.

Certification by the Superior Court in this case was approved by us because the questions certified relate to the construction and application of a statute, which have never been settled by this Court, certain decisions of the Superior Court are conflicting, and determination of the questions by us may result in the speedy termination of the litigation.

The facts are these: In December 1965, the respondent, Milltown Beverages, Inc. (Milltown), published its intent to apply for a liquor license. In January 1966, objections to the granting of the license were filed by more than ten residents of the neighborhood and by the present appellants, Carl G. and Rose A. Ahner and Midway Beverage Mart, Inc. Milltown, however, did not then file its application with the Delaware Alcoholic Beverage Commission (Commission), presumably be-

cause its publication did not comply with statutory requirements.

On June 23d, 1966, after making a new proper publication, Milltown filed its application with the Commission. On the following day, the Commission wrote to those persons who had objected in January, stating that the application had been received and that they might wish to file a protest. The Ahners and another individual did file written protests. After a hearing, the Commission granted Milltown's application, whereupon this appeal was docketed in the ·Court below.

Three questions have been certified:

"(1) Is an objection to the granting of a package store license which is received by the Commission before the filing of the application for license considered a protest filed 'within ten days of the filing of the application' under 4 Delaware Code § 541(b)?

(2) Is an objection to the granting of a package store license which is received by the Commission after publication of intent to apply for a license considered a protest filed 'within ten days of the filing of the application' under 4 Delaware Code § 541(b), where there is only one publisher's certificate and no application is filed, and where at least four months later proper publication is made and application for license is timely filed?

(3) Assuming arguendo that at least ten protestants have timely filed and a hearing is required under 4 Delaware Code § 541(b), do less than ten such protestants constitute 'a party to such hearing' who has the right to appeal under 4 Delaware Code § 541(c)?"

T. 4 Del.C. § 541(b) requires that a protest be filed "within ten days of the filing of the application". Since the section does not say "within ten days after the filing",

and since § 524 requires a newspaper publication of intention to file the application within 15 days prior thereto, it is quite possible that the Legislature intended the ten-day limitation to apply both before and after the filing date of the application. There are good reasons why there should be a deadline before ·as well as after the filing of the application. An objector may not know the actual date on which the application is filed; possibly the Legislature felt that his protest should not be ignored simply because his objection happens to reach the Commission before the application. The matter cannot be held up indefinitely; at the same time, the Commission would have considerable administrative difficulty keeping track of objections filed long before the application. Whatever may be the intent, because of our answer to question No. 3, there is no present need to give positive answers to the first two questions.

In Application of Pepper, 4 Terry 568, 54 A.2d 173, the former Court of General Sessions * held (correctly, we think) that, under the statute as it then stood, an appeal from the Commission to the Court could not be taken by less than ten objectors. The pertinent language then read as follows:

"The Commission's decision shall be final and conclusive unless within ten days after notice thereof the parties to such hearing shall appeal to the Court of General Sessions of the county in which the license would operate". (43 L. of D., p. 1130)

When our statutes were recodified in 1953, the foregoing language was reenacted as T. 4 Del.C. § 541(c) with only one change, i. e. the words "the parties to such hearing" were changed to "a party to such hearing". Because of this change, appellants contend that a single protestant may now appeal.

---

* All functions of the former Court of General Sessions have been transferred to the Superior Court. 48 L. of D., p. 234.

The interpretation of this provision in the Pepper case, supra, was based upon several considerations: (1) the use of the term "parties to such hearing"; (2) the requirement of at least ten protestants in order to obtain a hearing before the Commission; and (3) the belief that the reason for that requirement applies equally to an appeal from the Commission's ruling.

We are now asked to hold that the Legislature intended a complete reversal of the Pepper holding by adopting the statutory change mentioned above. We find it difficult to believe that this intent is demonstrated by such a slight alteration; it would seem more reasonable to expect an important change of policy like this to be expressed in much more explicit and unequivocal language. The word "party" has no exclusively single meaning. It is frequently used as a collective term to describe all the plaintiffs or defendants as a group. Black's Law Dictionary (4th ed.) 1278; 67 C.J.S. Parties § 1, p. 886; State v. Cady, 80 Me. 413, 14 A. 940; Curtis v. Lowe, 338 Ill.App. 463, 87 N.E.2d 865. It is reasonable to think that the members of the Revised Code Commission, who were able attorneys, had this definition in mind and considered the singular noun to be somewhat more precise in the context than the plural. Moreover, it is of some significance that the codifiers inserted no revision note referring to the change, although they were elsewhere careful to make specific explanatory comments about revisions other than those involving mere phraseology or arrangement of text matter. See T. 2 Del.C. page XV.

 In Monacelli v. Grimes, 9 Terry 122, 99 A.2d 255, the history of the 1953 codification is set forth at length. It was there held that the Revised Code was not intended to make changes of substantive law, and that there is a strong presumption that no substantive change is intended by alteration of language therein, although this presumption gives way when the new language in fact makes such a change in clear unambiguous terms. This presumption applies in the present case. Certainly, privilege of appeal to the Courts from an administrative body is something more than a mere matter of procedure; definition of who may exercise that right is substantive in nature. In contrast to the situation in Monacelli, supra, the language here does not clearly and unambiguously demonstrate an intent to change the substantive law.

 For these reasons our answer to question No. 3 is "No". The holding by the Superior Court to the contrary in Applications of X-Chequer Inn, Del.Sup., 229 A.2d 22, is overruled. We refrain from answering questions Nos. 1 and 2.